UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| WEAVER'S COVE ENERGY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-998 (ESH) |
| ) | |
| THAD W. ALLEN, Commandant, ) | |
| United States Coast Guard, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Weaver's Cove Energy, LLC ("Weaver's Cove") has filed suit against defendants Admiral Thad W. Allen, Commandant of the United States Coast Guard (the "Commandant"), Hala Elgaaly, Chief of the Bridge Administration Division of the United States Coast Guard (the "Chief"), and Rear Admiral Timothy S. Sullivan, Commander of the First Coast Guard District (the "Commander").  Plaintiff seeks a writ of mandamus pursuant to the Mandamus Act, 28 U.S.C. § 1361, and for judgment and relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  Defendants move to dismiss plaintiff's complaint.  For the reasons stated below, defendants' motion will be granted.

## BACKGROUND

This case involves a dispute over defendants' statutory and regulatory duties under the Truman-Hobbs Act, 33 U.S.C. § 513, and its implementing regulations, 33 C.F.R. Part 116.  The Truman-Hobbs Act authorizes the United States Coast Guard to order a bridge owner to alter any

1

bridge that unreasonably obstructs navigation. The regulations promulgated under the Truman-Hobbs Act establish a lengthy administrative procedure for investigating and determining whether a bridge constitutes "an unreasonable obstruction to navigation." *See* 33 C.F.R. §§ 116.01-116.55 (setting out complaint, preliminary investigation, detailed investigation, public hearing, and administrative review process).

By instituting suit, Weaver's Cove is attempting to force defendants to initiate these administrative procedures with respect to the old Brightman Street Bridge (the "Old Bridge"), which connects Fall River to Somerset, Massachusetts. Weaver Cove's interest in this bridge stems from the fact that it received authorization from the Federal Energy Regulatory Commission to construct and operate a liquid natural gas import, storage, and vaporization terminal facility at Fall River, Massachusetts, on the lower Taunton River. (*See id.* ¶¶ 1, 35.) The liquid natural gas will be delivered to plaintiff's facility in large specially-designed tankers transiting through the Federal Navigation Channel. (*Id.* ¶ 36.) To reach the facility, the tankers will have to transit through the Old Bridge (*id.* ¶ 5), and according to plaintiff, the defendants are obligated by statute to determine if the Old Bridge is an unreasonable obstruction to navigation, and if so, to order alterations of the bridge. (*Id.* ¶ 11.)

The Old Bridge is a one-hundred year-old drawbridge that spans the Federal Navigation Channel of the Taunton River between Fall River and Somerset, Massachusetts. (*Id.* ¶ 4.) It is located approximately 4,500 feet downstream of plaintiff's facility. (*Id.* ¶ 39.) The Old Bridge is a bascule bridge with two movable sections that open vertically to create a passage through the bridge span with unlimited vertical clearance. (*Id.* ¶ 5.) When the drawbridge is in an upright position, it has a 98 feet horizontal clearance (*id.* ¶ 47), which translates to an operational

horizontal clearance of 80 feet.  (*Id.* ¶¶ 5, 43.)[1]  The piers supporting the bascules of the Old Bridge are positioned on the western-most edge of the roughly 400-foot-wide Federal Navigation Channel.  (*Id.* ¶ 5.)  The Old Bridge is owned, operated, and maintained by the Commonwealth of Massachusetts through the Massachusetts Highway Department.  (*Id.* ¶ 4.)

Originally, plans were made to replace the Old Bridge with a new Brightman Street Bridge (the "New Bridge") to be located approximately 1,500 feet upstream of the Old Bridge.  (*Id.* ¶¶ 6, 47.)  The New Bridge would have a horizontal navigational span of at least 200 feet, compared with the Old Bridge's span of 98 feet.  (*Id.* ¶ 47; Pl.'s Ex. D.)  The pier supports of the New Bridge would be centered on the Federal Navigation Channel and would not be aligned with those of the Old Bridge, which are located on the western-most edge of the Channel.  (Compl. ¶ 7.)  The Commander mandated that the Old Bridge be demolished within 270 days of the completion of the New Bridge.  (*See* Pl.'s Ex. D. at 15-16; Pl.'s Ex. C at 2.)  Construction of the New Bridge began in 2001 and is still ongoing.  (Compl. ¶ 47.)

On August 10, 2005, however, Congress enacted legislation that prohibits the expenditure of federal funds for the demolition of the Old Bridge and requires that the Old Bridge be maintained. *See* Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. No. 109-59 at § 1948, 119 Stat. 1144, 1514.  Section 1948 states: "Notwithstanding any Federal law, regulation, or policy to the contrary, no Federal funds shall be obligated or expended for the demolition of the [Old] Bridge connecting Fall River and Somerset, Massachusetts, and the [Old] Bridge shall be maintained for pedestrian and bicycle access, and as an emergency service route."

---

[1] The horizontal clearance of the Old Bridge is too narrow to accommodate plaintiff's tankers.  (*See* Compl. ¶ 61.)

On April 3, 2006, the Bridge Program Manager for the First Coast Guard District, acting in the capacity of the Commander, requested authorization from the Commandant to investigate the Old Bridge as a "potential obstructive bridge." (Pl.'s Ex. I.)  In response, the Commandant authorized a Preliminary Investigation of the Old Bridge, under 33 C.F.R. § 116.15, stating that "it appears that the subject bridge may constitute an unreasonable obstruction to navigation." (Compl. Ex. J at 1.)  The Commander subsequently issued a notice of proposed rulemaking in the Federal Register, confirming that the Coast Guard would undertake a Preliminary Investigation of the Old Bridge.  *See* 71 Fed. Reg. 30108, 30109 (May 25, 2006).  However, in October 2007, the Coast Guard determined that a Preliminary Investigation of the Old Bridge was not warranted because Section 1948 prohibits the expenditure of federal funds for the demolition of the Old Bridge.  (Pl.'s Ex. B; Elgaaly Decl. ¶ 3; *see also* Section 1948, 119 Stat. at 1514.)

After plaintiff filed this lawsuit, in June 2008, the Coast Guard reconsidered its October 2007 decision and concluded that Section 1948 does not bar the use of federal funds for alterations short of complete demolition.  (*See* Elgaaly Decl. ¶ 4.)  On July 28, 2008, the Chief notified plaintiff that the Coast Guard had reauthorized a Preliminary Investigation of the Old Bridge.  (*See id.*)  However, the Coast Guard is currently conducting two unrelated investigations, and it has a backlog of thirty-one bridges awaiting Preliminary Investigation. (*See id.* ¶ 5.)  Because of this backlog and the need to prioritize its investigations based on the urgency of the situations in terms of navigational safety (*see id.* ¶ 5), the Coast Guard is unable to predict when the Preliminary Investigation of the Old Bridge will be undertaken.

## ANALYSIS

**I.      Mandamus**

Defendants move to dismiss plaintiff's complaint for lack of jurisdiction, or alternatively, for failure to state a claim upon which relief can be granted.  The Court concludes that the prerequisites for stating a cause of action under the Mandamus Act have not been met, and plaintiff has therefore failed to state a claim upon which relief may be granted.[2]

Plaintiff petitions for a writ of mandamus compelling defendants to perform the duties allegedly owed to plaintiff by the Truman-Hobbs Act, 33 U.S.C. § 511 *et seq.*, and the regulations promulgated thereunder, 33 C.F.R. Part 116.  (Compl. ¶ 14.)  The Mandamus Act provides that district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

The writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes."  *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotations and citation omitted); *accord Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *see also Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 353 (D.C. Cir. 2007).  It is available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (citations omitted); *see also Swan v. Clinton*, 100 F.3d 973, 977 n.1

---

[2] The Court need not separately address defendants' jurisdictional arguments, for the prerequisites for whether mandamus jurisdiction is conferred upon a district court are the same standards upon which the merits regarding whether a writ of mandamus should issue are reviewed.  *See, e.g.*, *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (in determining whether defendant has a duty, "mandamus jurisdiction under § 1361 merges with the merits"); *Swan v. Clinton*, 100 F.3d 973, 977 n.1 (D.C. Cir. 1996) (jurisdictional prerequisites are the "prerequisites for stating a cause of action").  By failing to prove a cause of action under the Mandamus Act, plaintiff also fails to establish jurisdiction under the Mandamus Act.

(D.C. Cir. 1996). The duty to be compelled must be nondiscretionary. *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). Moreover, a writ of mandamus may issue only where "the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable." *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C. Cir. 1995) (quotation omitted).

The Court has additional authority to refrain from issuing a writ, for the "exercise of the power of mandamus is a matter committed to the sound discretion of the trial court." *13th Regional Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980); *see also Whitehorse v. Ill. Cent. R.R. Co.*, 349 U.S. 366, 373 (1955) ("[M]andamus is itself governed by equitable considerations and is to be granted only in the exercise of sound discretion.").

**II.     Preliminary Investigation Report, Recommendation, and Decision (Count III)**

Plaintiff seeks a writ of mandamus to compel the Chief and the Commander to prepare and issue a "Preliminary Investigation Report," together with a recommendation whether to conduct a "Detailed Investigation," and to render a "Preliminary Decision." (Compl. ¶¶ 117-24; *see* 33 C.F.R. § 116.15.)

Under the regulations implementing the Truman-Hobbs Act, "[a]ny person, company, or other entity may submit[, in writing,] to the [Commander] . . . a complaint that a bridge unreasonably obstructs navigation." 33 C.F.R. § 116.05. Upon receipt of a written complaint, the Commander has a duty to "review the complaint to determine if, in the [Commander's] opinion, the complaint is justified and whether a Preliminary Investigation is warranted." *Id.* § 116.10(a). If the Commander decides to undertake a Preliminary Investigation, he is required "to prepare a written report containing all pertinent information and submit the report, together with

6

a recommendation for or against the necessity of a Detailed Investigation, to the [Chief]." *Id.* § 116.15(a).  "The Preliminary Investigation Report will include a description of the nature and extent of the obstruction, the alterations to the bridge believed necessary to meet the reasonable needs of existing and future navigation, the type and volume of waterway traffic, and a calculation of the benefits to navigation which would result from the proposed bridge alterations." *Id.* § 116.15(b).  Upon review of the Preliminary Investigation Report, the Chief is required to "make a Preliminary Decision whether or not to undertake a Detailed Investigation and a Public Meeting."  33 C.F.R. § 116.15(c).

The Commander has fulfilled his duty under 33 C.F.R. § 116.10(a) to make a determination as to whether a Preliminary Investigation is warranted.  The Coast Guard first authorized a Preliminary Investigation of the Old Bridge more than two years ago.  (*See* Pl.'s Ex. J.).  Then, following the passage of legislation banning the use of federal funds to demolish the Old Bridge, the Coast Guard decided in October 2007 that a preliminary investigation would be futile.  (*See* Pl.'s Ex. B at 2.)  However, after suit was filed, the Coast Guard reconsidered the matter and reauthorized the Preliminary Investigation on July 28, 2008.  (*See* Elgaaly Decl. ¶ 4.)

Defendants owe plaintiff no further non-discretionary duty at this time.  At this early stage of the administrative process, defendants have authorized but not yet begun a Preliminary Investigation.  The Commander's duty to issue the results of the Preliminary Investigation is not triggered until after the Preliminary Investigation has been undertaken.  *See* 33 C.F.R. 116.15(a) ("*During* the Preliminary Investigation, the [Commander] will prepare a written report . . .") (emphasis added).  The Chief's duty to make a Preliminary Decision regarding the need for a Detailed Investigation cannot be carried out until after the Preliminary Investigation Report has been issued.  *See id.* § 116.15(c) (requiring the Chief to review the Preliminary Investigation

7

Report when making a Preliminary Decision). Plaintiff's demand for the Preliminary Investigation Report, Recommendation, and Decision is therefore premature.

To the extent plaintiff seeks to compel the Commander to initiate the Preliminary Investigation, plaintiff's request must be denied. Neither the Truman-Hobbs Act nor its accompanying regulations establish a "clear and undisputable duty" for the Commander to implement a Preliminary Investigation within a specific time period. *See Shoshone Bannock Tribes*, 56 F.3d at 1480. Instead, the Preliminary Investigation of the Old Bridge must be prioritized relative to the thirty-one additional bridges also awaiting investigation.[3] (Elgaaly Decl. ¶ 5.) The Commander's prioritization of the pending Preliminary Investigations is a discretionary determination and is not subject to this Court's review under the Mandamus Act. *See Beatty v. Wash. Metro Transit Auth.*, 860 F.2d 1117, 1127 (D.C. Cir. 1988) ("Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions.").

Accordingly, this Court has no authority under the Mandamus Act to compel defendants to prepare and issue a Preliminary Investigation Report, Recommendation, and Decision. But even if it had such authority, the Court would not be inclined to use its power to interfere with the Coast Guard's prioritization process. *See In re Barr Labs.*, 930 F.2d 72, 75 (D.C. Cir. 1991) (withholding relief where "a judicial order putting [the petitioner] at the head of the queue simply moves all others back one space and produces no net gain"); *see also Mashpee Wampanoag Tribal Counsel, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).

## III.   Detailed Investigation (Count III)

Alternatively, plaintiff seeks a writ of mandamus compelling the Chief and Commander to undertake a "Detailed Investigation." (Compl. ¶¶ 111-16, 121-24; *see* 33 C.F.R. § 116.20.)

---

[3] The nine criteria for prioritizing bridges for investigations are found at paragraph 5.a of Chapter 7 of the Coast Guard Bridge Administration Manual, Commandant Instruction M16590.5C. (*See* Defs.' Ex. 1.)


Under 33 C.F.R. § 116.15(c), the Chief must "review the Preliminary Investigation Report and make a Preliminary Decision whether or not to undertake a Detailed Investigation and a Public Hearing." If the Chief decides a Detailed Investigation is warranted, then the regulations require the Commander to prepare a Detailed Investigation Report, *id.* § 116.20(a), and hold a public hearing. *Id.* § 116.25(a). The Commander is required to submit the Detailed Investigation Report to the Chief, together with a recommendation as to whether the bridge should be declared an unreasonable obstruction to navigation and, if so, whether alterations should be ordered. *Id.* § 116.20(b).

Mandamus relief is inappropriate here. The Chief's duty to make a Preliminary Decision regarding the need for a Detailed Investigation cannot be carried out until after the Preliminary Investigation Report has been issued. *See id.* at § 116.15(c) (requiring the Chief to review the Preliminary Investigation Report when making a Preliminary Decision).[4]

Nor is the Court persuaded by plaintiff's argument that the Navigation Review, issued by the Coast Guard on May 8, 2007, is the functional equivalent of a Preliminary Investigation Report, and that the Chief therefore is required to determine whether to conduct a Detailed Investigation, in accordance with 33 C.F.R. § 116.15(c). (*See* Compl. ¶ 114.)[5] The Coast Guard

---

[4] There is no evidence to support plaintiff's conclusory assertion that the Chief already has made a determination that a Detailed Investigation is necessary. (Compl. ¶ 113 (citing Pl.'s Ex. B).) Contrary to plaintiff's claim, the Chief made no such determination in the October 4, 2007 Letter to plaintiff. (*See* Pl.'s Ex. B.) The October 4 Letter, instead, clarified that a Preliminary Investigation had not been conducted and concluded that a Preliminary Investigation was not warranted because of Section 1948. (*See id.* at 1.)

[5] Plaintiff argues that the Navigation Review is in substance a Preliminary Investigation Report because it: (a) contains the results of fact finding and analysis required by 33 C.F.R. § 116.15(b) and Chapter 7 of the Bridge Administration Manual; (b) was issued by the same body responsible for issuing all Preliminary Investigation Reports pursuant to the Truman-Hobbs Act – *i.e.*, the Eighth District Bridge Branch (*see* Bridge Administration Manual at 7-3); (c) has not been supported by a citation of legal authority beyond the Part 116 regulations by which it was issued, *see* 5 U.S.C. § 555(c) ("Process, requirement of a report inspection, or other investigative act or demand may not be issued, made, or enforced except as authorized by law."); (d) was "conducted using the methodology provided in the Bridge Administration Manual for Truman-Hobbs investigations," (Pl.'s Ex. B); and (e) was prepared in

has consistently characterized the document in question as a "Navigation Review," rather than a Preliminary Investigation Report.  Moreover, the Navigation Review specifically states, "[i]t must be emphasized that this report is not a Truman-Hobbs study nor was it conducted to produce results that could be used in a Truman-Hobbs determination."  (Pl.'s Ex. H at 1.)  The Navigation Review also does not contain crucial information that would be required in a Preliminary Investigation Report.  Most importantly, the Navigation Review does not include "a calculation of the benefits to navigation which would result from the proposed bridge alterations," as is required for a Preliminary Investigation Report under 33 C.F.R. § 116.15(b).  This calculation informs the subsequent cost/benefit analysis, which calculates whether the benefits to navigation exceed the government's share of the cost of altering the bridge.  33 C.F.R. § 116.30.  The Navigation Review specifically notes that "[t]his report does not identify navigational benefits to alternative actions and its content is neither constrained by the requirements of Truman-Hobbs studies nor restricted in its scope of navigational issues covered."  (Pl.'s Ex. H at 1.)

      Because the first step of the administrative review process – the Preliminary Investigation – has not yet been completed, the Chief owes plaintiff no further non-discretionary duty at this time.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) (explaining the ripeness doctrine is designed to prevent courts from "entangling themselves in abstract disagreements over administrative policies" and from improperly interfering in the administrative decision-making process), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

---

direct response to the April 6 Memorandum's directive to promulgate a Preliminary Investigation Report.  (Pl.'s Opp'n at 19-20.)

## IV.    Public Hearing (Counts I and II)

Plaintiff further asks the Court to compel the Commandant to hold a public hearing as required by the Truman-Hobbs Act, 33 U.S.C. § 513 (Count I), and the regulations implementing the Truman-Hobbs Act, 33 C.F.R. Part 116 (Count II).  (*See* Compl. ¶¶ 91-100, 102-109.)

Under the Truman-Hobbs Act, "[w]henever any bridge shall, in the opinion of the [Commandant], at any time unreasonably obstruct such navigation, it shall be the duty of the [Commandant] . . . to hold a hearing."[6]  33 U.S.C. § 513.  Under the regulations implementing the Truman-Hobbs Act, "[w]henever the Coast Guard has good reason to believe that a bridge across any of the navigable waters of the United States is an unreasonable obstruction to navigation, the Coast Guard will . . . hold a public meeting."[7]  33 C.F.R. § 116.01(d).

The Commandant has not yet made a formal determination, through the 33 C.F.R. Part 116 administrative process, that the Old Bridge constitutes "an unreasonable obstruction to navigation," and this Court will defer to the Commandant on the issue of whether such determination is warranted in light of the evidence.  *See Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218 (1930) (explaining that mandamus may not "direct the exercise of judgment or discretion in a particular way").  Although a public hearing may be warranted in the future, the Court declines to invoke the extraordinary remedy of mandamus to require the Commandant to

---

[6] Under the Truman-Hobbs Act, the public hearing shall provide interested parties a "full opportunity to offer evidence and be heard as to whether any alteration of [the Old Bridge] is needed, and if so what alterations are needed."  33 U.S.C. § 513.  The Act further requires that if, after such hearing, the Commandant "determines that any alterations of such bridge are necessary in order to render navigation through or under it reasonably free, easy, and unobstructed, . . . he shall so find and shall issue . . . an order requiring such alterations of such bridge as he finds to be reasonably necessary for the purposes of navigation."  *Id.*

[7] Under the Coast Guard regulations, the public meeting shall provide interested parties a "full opportunity to be heard and to offer evidence on the question of whether alterations to the [Old Bridge] are necessary and, if so, the extent of alterations needed."  33 C.F.R. § 116.01(d).  The regulations further require that, "[i]f any bridge unreasonably obstructs navigation, the Commandant . . . will order the alteration of that bridge."  *Id.* at § 116.01(c).

11

hold a hearing at this time. *See* 33 C.F.R. § 116.15(c) (explaining that the determination whether to hold a public meeting is made after the Chief has reviewed the Preliminary Investigation Report); 33 C.F.R. § 116.25(a) (calling for a public meeting after the Chief has determined that a Detailed Investigation is warranted).

## V.     Declaratory Relief (Count IV)

Plaintiff also asks the Court to declare that Section 1948 "does not excuse or otherwise prevent Defendants from fulfilling their statutory responsibility under the Truman-Hobbs Act and related Coast Guard regulations with respect to the Old Bridge." (Compl. ¶ 126.)

The Court lacks jurisdiction to evaluate the merits of plaintiff's petition for declaratory relief because the issue is moot. "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008). Here, defendants agree that Section 1948 does not absolve them of their duties. (*See* Elgaaly Decl. ¶ 4.) Defendants have agreed to undertake the Truman-Hobbs administrative procedure, beginning with the Preliminary Investigation of the Old Bridge under 33 C.F.R. § 116.15. (*Id.*) Thus, the relief requested in Count IV is no longer necessary.

Alternatively, even if the Court were to deem the issue a live controversy, the Court would still be without jurisdiction because plaintiff's claim for declaratory relief is not ripe for review. *See Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803 807-08 (2003) (finding lack of jurisdiction where case is unripe); *see also Spirit of the Sage Council v. Norton*, 411 F.3d 225, 254 (D.C. Cir. 2005). "[I]f a plaintiff's claim . . . depends on future events that

may never come to pass, or that may not occur in the form forecasted, then the claim is unripe." *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 425 (D.C.Cir.2007).  To date, defendants have fulfilled their statutory and regulatory duties.  The Court has no authority to grant declaratory relief based on plaintiff's speculation that defendants may, in the future, conduct an investigation too narrow in scope, decline to hold a public hearing, or refuse to carry out their statutory and regulatory duties.  The controversy between the parties regarding the impact of Section 1948 on the defendants' statutory obligations is not "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  The Court has no authority to decide an issue that has not arisen and may never occur.  The claim is thus unripe.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** defendants' motion to dismiss.  Plaintiff's complaint is dismissed with prejudice.  A separate Order accompanies this Memorandum Opinion.


                                                          /s/
                                        ELLEN SEGAL HUVELLE
                                        United States District Judge

Date:   November 14, 2008